NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MIDDLESEX WATER COMPANY,<br><br>           Plaintiff,<br><br>  v.<br><br>3M COMPANY (f/k/a/ Minnesota Mining and Manufacturing, Co.); JOHN DOE DEFENDANTS 1-49,<br><br>           Defendants. | Case No. 18cv15366 (EP) (ESK)<br><br>**OPINION** |

**PADIN, District Judge.**

Defendant 3M Company moves for summary judgment on all claims in Plaintiff Middlesex Water Company's Second Amended Complaint ("SAC"), D.E. 140, pursuant to Fed. R. Civ. P. 56. The Court decides this matter on the papers pursuant to Fed. R. Civ. P. 78 and L.Civ.R.78.1(b). For the reasons stated below, the motion will be **DENIED**.

**I. BACKGROUND**

Plaintiff Middlesex Water Company is a New Jersey-based corporation, which owns and operates regulated water utility and wastewater systems in New Jersey, Delaware, and Pennsylvania, including a public water system in Middlesex, New Jersey that serves over 60,000 customers. D.E. 108 "SAC" ¶¶ 8-10. Defendant 3M Company is a Delaware corporation headquartered in St. Paul, Minnesota, which does business throughout the United States and manufactures more than 60,000 products in a myriad of different categories (*e.g.*, Post-it notes, Scotch Tape, Dobie scouring pads, Ace bandages, and Thinsulate insulation). *Id.* ¶¶ 11-14.

This is a case about water contamination. Plaintiff alleges that Defendant sold products containing perfluorooctanoic acid ("PFOA") and perfluorooctanesulfonic acid ("PFOS") to more than a dozen key customers in New Jersey. *Id.* ¶¶ 19-32. Plaintiff further alleges that Defendant's manufacture and sale of products containing PFOA and PFOS led to the discharge of these chemicals into the environment, which contaminated Plaintiff's public drinking water supply. *Id.* ¶¶ 1, 44.

PFOA and PFOS are part of a group of manmade chemicals that are collectively referred to as per-and polyfluoroalkyl substances ("PFAS"). PFAS are manmade chemicals that have been manufactured and used in the United States since at least the 1940s. D.E. 141-30 "MWC PFOA Info Session" at 3. PFAS are very persistent in the environment and in the blood of animals and humans in the United States as they are extremely resistant to degradation, are able to migrate (*e.g.*, from soil to groundwater), are not easily removed from the environment, and typical water treatment plants are unable to filter or treat PFAS. SAC ¶¶ 38-40, 43. They are sometimes referred to as "forever chemicals." Health effects of concern for PFAS, including PFOA and PFOS, include impacts on the liver, decreased immune system responses to vaccines, delays in growth and development of fetuses and infants, and an increased risk of cancer. D.E. 157-2 at 2.

Defendant began producing PFOA and PFOS in the 1940s and, later, phasing them out in the early 2000s. SAC ¶¶ 77-78. Plaintiff alleges that as early as the 1950s, Defendant learned that PFAS are toxic— both through Defendant's own internal animal studies and an independent Stanford University study. *Id.* ¶¶ 56-57. At that time, Defendant also learned that its PFAS bioaccumulate in the human body. *Id.* ¶ 58. By the 1960s and 70s, Defendant allegedly understood that PFAS persist in the environment and do not degrade. *Id.* ¶¶ 59, 61, 64. Furthermore, Plaintiff claims that Defendant actively sought to suppress scientific research on the hazards of PFAS, going

so far as to mount a campaign to control the scientific dialogue on the exposure and effects on human health, and ecological risks associated with PFAS.  *Id.* ¶¶ 68-74.

In May 2016, the Environmental Protection Agency ("EPA") announced Drinking Water Health Advisories for PFOA and PFOS of 14 ppt.[12]  *See* MWC PFOA Info Session at 6, 11; *see also* D.E. 207.  In June 2020, New Jersey's Department of Public Environmental Protection ("NJDEP") adopted enforceable[3] Maximum Contaminant Level ("MCL") standards for PFOA and PFOS of 14 ppt and 13 ppt, respectively, for public drinking water.  MWC PFOA Info Session at 8; D.E. 152-25 at 1; SAC ¶¶ 82-83.

Monitoring of Plaintiff's public drinking water wells at its Park Avenue Treatment Plant ("Park Avenue Wells"), located in South Plainfield, New Jersey, revealed levels in excess of EPA's advisories and NJDEP's guidelines.  MWC PFAS Treatment Report at 0-1; MWC PFOA Info Session at 11.  For example, Plaintiff learned in early September 2020 that water in its Park Avenue Wells contained the following amounts of PFOA in the first three quarters of 2020: 25 ppt; 23 ppt; and 36 ppt.  MWC PFOA Info Session at 11.  Plaintiff alleges that Defendant has known of the toxicity and persistence of PFOA and PFOS for decades, but has knowingly and intentionally manufactured and distributed PFAS-containing products to the detriment of Plaintiff and New Jersey citizens.

Plaintiff brings claims against Defendant for negligence (Count One), negligent failure to warn (Count Two), strict liability failure to warn (Count Three), private nuisance (Count Four), and past and continuing trespass (Count Five).  SAC ¶¶ 97-137.  Plaintiff seeks: damages,

---

[1] Parts per trillion ("ppt").
[2] On September 15, 2022, the parties note in a status letter to the Court that EPA drastically lowered its advisories for PFOA to .004 ppt and PFOS to .002 ppt in June 2022.  *See* D.E. 209.  The Court takes note of the updated advisories here, but because EPA did not release them until after the instant motion was fully-briefed, the Court does not take them into consideration in its decision here.
[3] Whereas, EPA's advisories are recommendations, NJDEP's MCLs are enforceable.  D.E. 157-1 "MWC PFAS Treatment Report" at 0-1.

including but not limited to investigation, clean-up, abatement, remediation, engineering, treatment and monitoring costs incurred by Plaintiff to comply with federal and state regulatory advisories and standards, attorneys' fees, punitive damages, and any other appropriate equitable relief.  *Id.* at 20-21.

Defendant moves for summary judgment as to all five claims in Plaintiff's SAC, D.E. 140. That motion is now fully-briefed and ripe for the Court's decision.

## II.    STANDARD OF REVIEW

Summary judgment is only proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002).  A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Disputes over irrelevant or unnecessary facts will not preclude a court from granting a motion for summary judgment.  *See id.*

The party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 136, 145-46 (3d Cir. 2004).  The moving party must support its motion by citing to specific materials in the record.  Fed. R. Civ. P. 56(c)(1)(A).  Once the moving party has adequately supported its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file,

designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal citation and quotation marks omitted). The nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. The nonmoving party "cannot create an issue of fact merely by [] denying averments [] without producing any support evidence of the denials." *Thimons v. PNC Bank, NA*, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Where the nonmoving party's "evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50). But "[i]f reasonable minds could differ as to the import of the evidence," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250-51.

In reviewing a motion for summary judgment, the Court "may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marina v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). But if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case[,]" then there is "no genuine issue as to any material fact[,]" and summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 322. However, "[i]f reasonable minds could differ as to the import of the evidence," summary judgment is inappropriate. *See Anderson*, 477 U.S. at 250-51.

### III.     DISCUSSION

#### A.     Defendant is Not Entitled to Summary Judgment on Count One

First, the Court must address whether Defendant is entitled to summary judgment with respect to Plaintiff's negligence claim. To prevail on a negligence claim, a plaintiff must establish

5

four elements: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) proximate cause; and (4) actual damages to the plaintiff. *See, e.g.*, *Stanley Co. of Am. v. Hercules Powder Co.*, 16 N.J. 295, 108 A.2d 616 (N.J. 1954); *see also Prosser and Keeton on the Law of Torts*, § 30, at 164-65 (5th ed. 1984). With respect to Plaintiff's negligence claim, Defendant argues that it is entitled to summary judgment because Plaintiff cannot establish that Defendant proximately caused the contamination of the Park Avenue Wells. D.E. 141-1 "Mot." at 9.

Typically, whether proximate cause can be established is a genuine issue of material fact best resolved by a jury. *Scafidi v. Seiler*, 119 N.J. 93, 574 A.2d 398, 402 (1990); *see also Fleuhr v. City of Cape May*, 159 N.J. 532, 543, 732 A.2d 1035 (1999) ("Ordinarily, the issue of proximate cause should be determined by the factfinder…however, [the issue] may be removed from the factfinder in the highly extraordinary case in which reasonable minds could not differ on whether that issue has been established."). Resultingly, the Court proceeds with caution in resolving Defendant's instant motion.

"Proximate cause consists of 'any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred.'" *Conklin v. Hannoch Weisman*, 145 N.J. 395, 418, 678 A.2d 1060 (1996). A plaintiff bears the burden of showing that "a defendant's conduct constituted a cause-in-fact of his injuries." *Vizzoni v. B.M.D.*, 459 N.J. Super. 554, 568, 212 A.3d 962 (App. Div. 2019). But "an act or omission [by a defendant] is not regarded as a cause-in-fact of an event if the event would have occurred without such act or omission." *Thorn v. Travel Care, Inc.*, 296 N.J. Super. 341, 346, 686 A.2d 1234 (App. Div. 1997) (citing *Kulas v. Pub. Serv. Elec. & Gas Co.*, 41 N.J. 311, 317, 196 A.2d 769 (1964)). Instead, only an act or omission which was "a substantial

factor" in bringing about the complained of damages is considered a cause-in-fact, but it need not be the only cause. *Id* at 347 (citation omitted).

Finally, while a plaintiff bears the burden of establishing proximate cause, he is "not obliged to establish it by direct, indisputable evidence[;]" instead, "[t]he matter may rest upon legitimate inference, so long as the proof will justify a reasonable and logical inference as distinguished from mere speculation." *Kulas*, 41 N.J. at 319. In other words, a plaintiff satisfies this burden by introducing evidence which affords a reasonable basis for the conclusion that it is "more likely than not" that the defendant's act or omission was a cause in fact of damages. *Townsend v. Pierre*, 221 N.J. 36, 60-61, 110 A.3d 52 (2015) (citation omitted).

Here, Defendant proffers two alternative reasons in support of its argument that Plaintiff cannot establish proximate cause: (1) Plaintiff cannot demonstrate that Defendant manufactured the PFOA or PFOS that ended up in the Park Avenue Wells; and (2) even if Plaintiff could demonstrate that Defendant manufactured the PFOA or PFOS in the Park Avenue Wells, Plaintiff cannot establish the natural and continuous sequence between Defendant's sale or distribution of the PFOA or PFOS and the contamination of the Park Avenue Wells. Mot. at 10. For the reasons that follow, Plaintiff raises a genuine dispute as to Defendant's proximate cause arguments; therefore, the Court concludes that Defendant is not entitled to summary judgment.

First, Defendant provides three reasons why Plaintiff's evidence is insufficient to demonstrate that Defendant manufactured the PFOA or PFOS in the Park Avenue Wells: (1) Defendant was not the only manufacturer who used electrochemical fluorination ("ECF") to manufacture PFOA and PFOS; (2) chromatograms cannot differentiate between ECF products by manufacturer; and (3) Plaintiff improperly relies on Defendant's substantial share of the PFOA and PFOS market. *See* Mot. at 12. Plaintiff, in response, proffers several allegations that

7

collectively support its argument that it is more likely than not that Defendant manufactured the PFOA and PFOS in the Park Avenue Wells, including: (1) Defendant was the primary global manufacturer of both PFOA and PFOS until the early 2000s, D.E. 152-6 "Tr. Mader" at 51:15-53:7, 85:10-14; (2) Defendant's long-time toxicologist, Dr. John Butenhoff, testified that based on what he knows about the manufacturing and persistence of PFOS that it's a matter of mathematical probability that a PFOS particle found in the United States that Defendant is more likely than not to be the source, D.E. 152-11 "Tr. Dr. Butenhoff" at 520:24-521:24; (3) Defendant is the only entity known to have distributed PFOA or PFOS-containing products to businesses in and around the Park Avenue Wells,[4] PFOA's isomer profile is consistent with Defendant's patented ECF technology, and the PFOA and PFOS in the Park Avenue Wells are highly correlated with other PFAS present in Defendants' products, D.E. 152-12 "Tr. Dr. Higgins" at 18-19, Tr. Mader at 255:3-8, 259:5-8, 263:20-264:1;[5] and (4) Defendant is reportedly responsible for 85 percent of global PFOA manufacturing and is the only known manufacturer of PFOS in the United States, *see* D.E. 152-15 "2015 DART Letter & Rec." at 1.

Viewing the evidence in the light most favorable to the nonmoving party, the Court finds that there is a genuine dispute as to whether the PFOA and PFOS in the Park Avenue Wells were manufactured and distributed by Defendant. The Court believes a factfinder may reasonably infer that Plaintiff can establish proximate cause based on a handful of facts in the record. First, Defendant's Rule 30(b)(6) witness, Brian Mader, Ph.D., confirmed that with Defendant selling POSF-based[6] products to key customers in New Jersey that it was at least possible, if not

---

[4] Mr. Mader confirmed that 3M had 13 key customers that received products containing PSOF in New Jersey. Tr. Mr. Mader at 259:2-8.
[5] In a separate motion, Defendant moves to preclude the expert testimony of Dr. Christopher Higgins.
[6] Perfluorooctanesulfonyl flouoride ("POSF") is used to make PFOS and PFOS-based chemicals. POSF ultimately degrades into PFOS.

foreseeable, that PFOS originating from Defendant's products would be released into waterways in New Jersey. *See* Tr. Mader at 259:2-8, 263:20-264:16.

Second, in a 2015 letter to the California Office of Environmental Health Hazard Assessment, Defendant acknowledged that until its phaseout (in the early 2000s) it was "the only known manufacturer of PFOS and PFOS precursors in the United States." 2015 DART Letter & Rec. at 2. That statistic coupled with the fact that "[m]anufacturing and importation of PFOS into the United States ceased in 2002 (except for a small number of critical applications with limited exposure potential)" and the fact that PFOS is not easily removed from the environment could lead a reasonable factfinder to conclude that the PFOS found in the Park Avenue Wells was manufactured by Defendant. *See* 2015 DART Letter & Rec. at 5.

Third, that Defendant was not the "only" manufacturer who used ECF to manufacture PFOA and PFOS is not fatal to Plaintiff's claims for two reasons: (1) the volumes of ECF-produced PFOS by other manufacturers was minor; and (2) the volumes of ECF-produced PFOA by other manufacturers has largely occurred outside of the United States and only after the significant new use rule was implemented in the United States, which could lead to the reasonable inference that it is more likely than not that ECF-produced PFOA found in the United States was manufactured by Defendant. *See, e.g.*, D.E. 157-26 at 128:2-24, 139:1-9. Thus, the Court finds that Defendant's assertions do not, as a matter of law, stand up against the facts in the record.[7]

Defendant also claims that even if Plaintiff could demonstrate that Defendant manufactured the PFOA and PFOS in the Park Avenue Wells that Plaintiff cannot establish proximate cause

---

[7] The Court notes that Defendant's position that Plaintiff is asserting a market share theory of liability by proffering evidence that Defendant is the primary manufacturer of PFOA and PFOS in the United States is misplaced. Plaintiff does not assert a market share theory of liability; instead, Plaintiff merely provides evidence that Defendant holds such a large portion of the market that it would be inappropriate for the Court to determine as a matter of law that Defendant is not responsible for the contamination of the Park Avenue Wells. The Court is not excusing Plaintiff's burden of establishing that Defendant proximately caused its damages, which is what the market share theory of liability does because it creates a presumption in favor of Plaintiff.

9

because it has not demonstrated that its harms were a natural and continuous consequence of Defendant's alleged tortious conduct. *See* Mot. at 18. Specifically, Defendant asserts that Plaintiff has not identified a particular third-party user of Defendant's products whose use or disposal of those products in New Jersey caused the contamination of the Park Avenue Wells.[8] Mot. at 19-20. Plaintiff rebuts, with a series of persuasive case law, that it need only establish that Defendant's conduct made it foreseeable that a third-party's use and disposal of Defendant's PFAS would contaminate the water in the Park Avenue Wells. D.E. 152 "Opp'n" at 24-25 (citing *Hardwick v. 3M Co.*, 2019 U.S. Dist. LEXIS 169322, at *46-47 (S.D. Ohio 2019); *Weirton Area Water Bd. v. 3M Co.*, 2020 U.S. Dist. LEXIS 237871, at *15-16 (N.D. W. Va. 2020); *Parris v. 3M Co.*, 2022 U.S. Dist. LEXIS 60043, at *73-74 (N.D. Georgia Mar. 30, 2022)).

The Court largely agrees with Plaintiff's position, but adds that not only must the contaminated water in the Park Avenue Wells have been a foreseeable consequence of Defendant's conduct, but also that the causal connection between the two events was not broken by a "superseding intervening cause." *See Davis v. Brooks*, 280 N.J. Super. 406, 412-13, 655 A.2d 927 (App. Div. 1993) (collecting cases). A superseding intervening cause is one that "entirely supersedes the operation of the first tortfeasor's negligence that it alone caused the injury, without the first tortfeasor's negligence contributing thereto in any material way." *Id.* But an intervening cause is not superseding so long as it is "one which might, in the natural and ordinary course of things, be anticipated as not entirely improbable." *Id.*; *see also Bandel v. Friedrich*, 235 N.J. Super. 384, 390, 562 A.2d 813 (Super. Ct. App. Div. 1989); *McKenna v. City of Philadelphia*, 649 F.3d 171, 178 (3d Cir. 2011) (finding that a cause is superseding only if it is a "cause of independent origin that was not foreseeable.") (internal quotation marks omitted).

---

[8] As Plaintiff mentions in its opposition, Defendant incorrectly likens Plaintiff's proximate cause burden to that of a fraud claim, in which a plaintiff is required to demonstrate the who, what, when, where, and how of an event at issue.

Here, in claiming that Plaintiff cannot establish proximate cause, because it has not identified a third-party user of Defendant's products whose use or disposal of those products in New Jersey caused the Park Avenue Wells' contamination, Defendant appears to indirectly claim that Plaintiff's failure to identify a relevant third-party user of Defendant's products is evidence of a superseding intervening cause. Assuming, *in arguendo*, that Defendant's PFOA and PFOS are in fact those present in the Park Avenue Wells, the Court finds that Defendant has not adduced any evidence, direct or indirect, of a break in the causal connection between its conduct and the contamination.

Whether Plaintiff can establish proximate cause is a question the Court finds is appropriate for the factfinder. Accordingly, the Court concludes that Defendant has not established, as a matter of law, that Plaintiff cannot demonstrate proximate cause.

**B.      Defendant is Not Entitled to Summary Judgment on Counts Two and Three**

Next, the Court must address whether Defendant is entitled to summary judgment with respect to Plaintiff's failure to warn claims. Plaintiff brings a failure to warn claim under both a theory of negligence and a theory of strict liability. *See* SAC ¶¶ 108-125. The crux under both theories of liability is that Defendant failed to warn Plaintiff and the public of the dangers of the PFAS in its products.

Under New Jersey law, a manufacturer shall be liable for negligent failure to warn "if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it [] failed to contain adequate warnings or instructions[.]" N.J.S.A. § 2A:58C(2). A plaintiff must establish: (1) the defendant had a duty to warn; (2) the defendant breached that duty; and (3) the defendant's breach caused the plaintiff's damages. *See James v. Bessemer Processing Co.*, 155 N.J. 279, 714 A.2d 898 (1998)

11

(citation omitted). A manufacturer's duty to warn is premised on the notion that a product is defective absent an adequate warning for foreseeable users that the product can potentially cause injury. *Clark v. Safety-Kleen Corp.*, 179 N.J. 318, 336, 845 A.2d 587 (2004) (quotation marks omitted). That duty is limited to risks that the manufacturer knows or ought to know, unless the risk and the way to avoid it are obvious. *Feldman v. Lederle Labs.*, 97 N.J. 429, 434, 479 A.2d 374 (1984). A manufacturer's failure to provide adequate warnings constitutes a breach of duty. *Clark*, 179 N.J. at 336 (citation omitted). With respect to causation, a plaintiff must demonstrate that the defect in the product was a proximate cause of the alleged damages. Typically, a "jury [not the Court] considers issues of proximate cause." *See Shelcusky v. Garjulio*, 172 N.J. 185, 206, 797 A.2d 138 (2002).

Under New Jersey law, a manufacturer shall be strictly liable for damages resulting from the use of its products, where the manufacturer fails to produce and distribute a product that is fit, suitable, and safe for its foreseeable purposes. *Feldman v. Lederle Labs.*, 125 N.J. 117, 144 (1991) (citation omitted). A product may be unsafe, and therefore defective, because of a failure to warn or due to an inadequate warning. *Freund v. Cellofilm Properties, Inc.*, 87 N.J. 229, 242, 432 A.2d 925 (1981). If a manufacturer subsequently learns of a danger relevant to its products, it is obligated to communicate a warning "as soon as reasonably feasible." *Feldman*, 125 N.J. at 144 (citation omitted). "When liability is premised on the failure to warn or an inadequate warning, the issue becomes whether the manufacturer knew or could have known of the danger and, if so, whether it acted in a reasonably prudent manner [] in providing the warnings given." *Id.* (citation and quotation marks omitted). As a result, negligent and strict liability failure to warn claims are treated as functional equivalents. *Id.* at 144 (citation omitted). Thus, the Court will proceed with one analysis here.

12

With respect to the failure to warn claims, Defendant asserts that it is entitled to judgment as a matter of law because Plaintiff has not identified "what" product was dangerous and defective. Mot. at 24. Plaintiff responds that there is "no requirement that a warning be placed on a specific product to succeed" on a failure to warn claim—brought under either a theory of negligence or strict liability. Opp'n at 30. The Court agrees with Plaintiff.

Specifically, Defendant's duty to warn foreseeable users is not limited to one product, but rather, it reasonably extends to any products containing PFAS that Defendant places into the market, and which Defendant knows or has reason to know contain PFAS. In fact, in *N.J. Dep't of Envtl. Prot. v. E.I. du Pont de Nemours & Co.*, 2021 U.S. Dist. LEXIS 247973, at *14, 26-27 (D.N.J. Dec. 30, 2021), in a similar case brought by NJDEP against 3M, and others, the district court explicitly found that 3M owed a duty to warn NJDEP that "3M's PFAS-containing products could endanger New Jersey's citizens and environment." There, the district court emphasized that imposing a duty to warn on 3M—who was the party with the relevant knowledge to protect New Jersey's citizens and resources—was consistent with the foreseeability of the harm caused by PFAS and fairness. *Id.* at *25-26. The district court focused on the "dangerous propensities" of 3M's products. *See id.* (citing *Maryland v. Exxon Mobil Corp.*, 406 F. Supp. 3d 420 (D. Md. 2019), a case in which the district court found that the defendant owed a duty to warn the state about the dangers of methyl tertiary butyl ether ("MTBE"), which could foreseeably end up in the environment through, *inter alia*, disposals, spills, and evaporative releases) (citation omitted). Notably, the district court did not find fatal the fact that NJDEP did not identify a particular product manufactured by 3M. Likewise, the fact that Plaintiff does not identify a particular product manufactured by Defendant is not fatal to its failure to warn claims at this juncture.

13

Defendant also haphazardly asserts that Plaintiff cannot establish causation. *See* Mot. at 24-25. As previously mentioned in this Opinion, proximate cause is typically a factual issue best resolved by a factfinder, unless reasonable minds could not differ on whether the issue has been established. Based on Defendant's cursory address of whether Plaintiff can establish proximate cause, it would be inappropriate for the Court to find that Defendant is entitled to judgment as a matter of law on this issue. *See Michalko v. Cooke Color & Chemical Corp.*, 91 N.J. 386, 402-03, 451 A.2d 179 (1982) (finding that the question of "whether the failure to warn proximately caused a plaintiff's injury is a factual dispute that the jury should decide.").

Accordingly, because Defendant has not established as a matter of law that Plaintiff cannot establish the essential elements of its negligent and strict liability failure to warn claims, the Court will deny summary judgment on these claims.

C.      **Defendant is Not Entitled to Summary Judgment on the Scope of Plaintiff's Damages**

Finally, the Court must address Defendant's assertion that, if Plaintiff is able to establish liability, Plaintiff's damages should be limited to the reasonable costs of treating the water in the Park Avenue Wells to comply with New Jersey MCLs. Mot. at 32. With respect to Plaintiff's surviving claims,[9] Plaintiff claims that it has suffered and continues to suffer property damage requiring investigation, remediation, treatment, and monitoring costs as a result of Defendant's alleged contamination of the Park Avenue Wells. *See* SAC ¶¶ 107, 118, 125. Defendant urges the Court to hold that Plaintiff may not recover damages for the cost of any system other than a granular activated carbon ("GAC") system,[10] because any additional damages would be inequitable and speculative. *Id.* at 32-33. Plaintiff responds that its protectable interest is not

---

[9] Negligence, negligent failure to warn, and strict liability failure to warn.
[10] GAC is the most common treatment method in both drinking water and groundwater remediation of PFAS contamination, but it does have limitations. MWC PFAS Treatment Report at 5-1.

limited to bringing the contamination of its Park Avenue Wells in compliance with regulatory standards (*e.g.*, New Jersey MCLs). *See* Opp'n at 27-30. The Court concludes that a genuine dispute exists as to the scope of Plaintiff's damages.

Plaintiff offers persuasive support for its proposition that its damages should not be limited to the cost of the GAC system, which would reduce the concentration of PFOA and PFOS levels permissible by New Jersey MCLs, because "MCLs are not determinative of what constitutes a safe level of any chemical." *See* Opp'n at 27. Plaintiff cites to several non-binding cases in which courts have found that MCLs do not define the scope of a plaintiff's protected interests or injury. *See* Opp'n at 27-28 (citing *United Water N.Y. v. Amerada Hess Corp. (In re MTBE Litig.)*, 458 F. Supp. 2d 149, 155, 157-59 (S.D.N.Y. 2006); *Suffolk Cty. Water Auth. v. Dow Chem. Co.*, 35 Misc. 3d 307, 313-14 (N.Y. Sup. Ct. Suffolk Cty. 2012); *Lueke v. Union Oil Co. of Calif.*, 2000 Ohio App. LEXIS 4845, at *12 (Ohio Ct. App. 2000)). Plaintiff provides that MCLs are merely regulatory standards set by governmental agencies and they vary from state to state; therefore, they cannot be conclusive as to the degree of a party's injury. *See* Opp'n at 28. Additionally, Plaintiff cites to NJDEP's "PFAS Standards and Regulations," which state that "[a]n MCL is the highest allowable concentration of a contaminant in water delivered to a user of a public drinking water supply." D.E. 152-25 "NJDEP PFAS Standards" at 1.

Taking the evidence Plaintiff provides cumulatively, the Court believes that a factfinder could make more than one reasonable inference with respect to the impact of the New Jersey MCLs for PFOA and PFOS on Plaintiff's damages. First, a reasonable inference could be drawn that New Jersey MCLs set the ceiling for Plaintiff's damages; this would be the case if a factfinder concludes that Plaintiff's damages are limited to bringing its Park Avenue Wells into compliance with those standards. Or, alternatively, the New Jersey MCLS set the floor for Plaintiff's damages;

this would be the case if a factfinder concludes that Plaintiff's damages encompass the removal of all PFOA and PFOS from the Park Avenue Wells.

Notably, Defendant mentions that the remedy for environmental contamination is typically a plaintiff's remediation costs. Mot. at 31 (citing *N.J. Dep't of Envtl. Prot.*, 323 F.R.D. at 223; *Grand St. Artists v. Gen. Elec. Co.*, 1997 WL 33475074, at *4 (D.N.J. Feb. 11, 1997)). Determining the scope of Plaintiff's remediation costs is precisely the genuine dispute of fact that remains.

Accordingly, with respect to the scope of Plaintiff's damages, Defendant is not entitled to judgment as a matter of law.

### D.     Dismissal of Counts Four and Five

Plaintiff originally brought claims for private nuisance and past and continuing trespass against Defendant. SAC ¶¶ 126-137. Defendant asserts it is entitled to summary judgment on these two claims and provides adequate support. *See* Mot. at 25-31. However, instead of responding to Defendant's arguments, Plaintiff voluntarily withdraws these claims in its opposition. Opp'n at 2 n.1. When confronted with a properly supported motion for summary judgment, Plaintiff cannot simply respond by withdrawing claims in an attempt to preserve the merits of those claims for another day or another form. *New W. Urban Renewal Co. v. Viacom, Inc.*, 230 F. Supp. 2d 568, 576 (D.N.J. 2002); *Amland Properties Corp. v. Aluminum Co. of Am.*, 808 F. Supp. 1187, 1196 (D.N.J. 1992). "It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal." *Fischer v. G4S Secure Solutions USA, Inc.*, 614 F. App'x 87, 91 n.3 (3d Cir. 2015); *see also McKenna v. Portman*, 538 F. App'x 221, 224 n.5 (3d Cir. 2013) ("Although their

16

Amended Complaint seeks relief under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments, in their briefs both before this Court and the District Court, Plaintiffs only oppose the dismissal of their Fifth and Fourteenth Amendment claims and essentially concede all remaining claims."). Pursuant to Fed. R. Civ. P. 56(e), the Court may consider facts asserted as undisputed and grant summary judgment.

On June 2, 2022, this Court (Neals, J.) dismissed these two claims with prejudice pursuant to Fed. R. Civ. P. 41(a)(1). D.E. 176. Here, the Court concludes that while this dismissal is appropriate that it is based on relevant case law and Fed. R. Civ. P. 56(e). The Court makes this conclusion because Plaintiff has conceded the merits of these two claims by failing to dispute the relevant arguments Defendant raises in favor of summary judgment.

## IV.     CONCLUSION

For the reasons stated herein, Defendant's motion for summary judgment will be **DENIED** with respect to Plaintiff's negligence (Count One), negligent failure to warn (Count Two), and strict liability failure to warn (Count Three) claims, as well as with respect to Defendant's claim to limit the scope of Plaintiff's potential damages. An appropriate Order accompanies this Opinion.

Dated: October 31, 2022

_____
Hon. Evelyn Padin, U.S.D.J.